# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2026

Lyle W. Cayce
Clerk

—————

No. 25-40026

—————

United States of America,

*Plaintiff—Appellant*,

*versus*

Concepcion Gerardo Palomares,

*Defendant—Appellee*.

—————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:24-CR-811-1

—————————————————————

Before Higginbotham, Smith, and Oldham, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Concepcion Palomares was charged with unlawful possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). The count was predicated on his conviction of transporting illegal aliens. The district court dismissed the count as violative of the Second Amendment. The government appeals.

Because alien smuggling is an inherently dangerous felony, the government can disarm Palomares consistent with the Second Amendment. We reverse and remand.

No. 25-40026

## I.

Count One was unlawful possession of a firearm as a felon, in violation of § 922(g)(1), predicated on Palomares's conviction of transporting illegal aliens within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). Palomares filed a motion to dismiss that count, contending that it violated the Second Amendment as applied to him.[1]  The government asserted that disarmament based on a § 1324(a)(1)(A)(ii) conviction is consistent with the Second Amendment because slave smuggling was a capital offense at the Founding.  The district court granted Palomares's motion to dismiss, concluding that § 922(g)(1) is unconstitutional as applied to him because § 1324(a)(1)(A)(ii) and Founding-era laws regulating the illegal importation of slaves are not sufficiently analogous.

## II.

"We review preserved challenges to the constitutionality of a criminal statute *de novo*.  But if the constitutional challenge was not presented to the district court, we review for plain error."  *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014) (citation modified).

The government posits that Palomares's conviction is consistent with the Second Amendment for two independent reasons:  (1) § 1324(a)(1)(A)(ii) is an inherently dangerous felony and (2) disarmament based on a § 1324(a)-(1)(A)(ii) conviction is analogous to Founding-era laws that "severely punished individuals who engaged in human trafficking."

Palomares contends that we may review the government's first theory only for plain error, as it was not explicitly raised before the district court.

---

[1] Palomores's initial motion to dismiss was held in abeyance while we decided *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025). He amended and refiled after *Diaz* was decided.

2

No. 25-40026

But when defending § 922(g)(1)'s constitutionality, "the government may provide additional legal support for its arguments on appeal."[2]  We thus review both of the government's arguments *de novo*.

### III.

The Second Amendment guarantees that "the right of the people to keep and bear Arms[] shall not be infringed." U.S. CONST. amend. II. Because the Second Amendment's plain text covers the conduct prohibited by § 922(g)(1), the government must "demonstrate that regulating [Palomares's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'  To satisfy this burden, the government must 'identify a well-established and representative historical *analogue*, not a historical *twin*.'" *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 24, 30).

"The Second Amendment allows Congress to disarm classes of people it reasonably deems dangerous[.]" *United States v. Kimble*, 142 F.4th 308, 314–15 (5th Cir. 2025), *cert. denied*, 223 L. Ed. 2d 564 (Jan. 20, 2026).  In *Kimble*, we held that the government could disarm a convicted drug trafficker under § 922(g)(1).  There was an "undeniable throughline" that "Founding-era governments took guns away from those perceived to be dangerous[.]" *Id.* at 316 (quoting *United States v. Connelly*, 117 F.4th 269, 278 (5th Cir. 2024)).  That throughline supported lifetime disarmament for convicted drug traffickers because "drug dealing is notoriously linked to violence" and is therefore "an inherently dangerous activity[.]"  *Id.* at 316–17 (quoting *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011)).

---

[2] *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam) (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 25 n.6 (2022)), *cert. denied*, 146 S. Ct. 255 (2025); *see also United States v. Mitchell*, 160 F.4th 169, 189 (5th Cir. 2025) ("*Bullock* provides authority that the government may raise new historical analogues on appeal[.]").

No. 25-40026

Like drug trafficking, alien smuggling under § 1324(a)(1)(A)(ii) is "inherently dangerous and often results in death and injury to both aliens and government agents." *United States v. Mendez*, 431 F.3d 420, 428 (5th Cir. 2005) (citation omitted). Much of the human-smuggling business along the Mexico border is controlled by drug-trafficking cartels.[3] Cartels use "increased violence to maintain, and seize, new international trade routes and corridors in order to facilitate the international transportation of contraband and immigrants."[4] Smuggled aliens often face exploitation in the form of "theft, assault, threats, kidnapping (to extort more money), or ransom."[5] And the transportation itself is often dangerous, as traffickers routinely cram numerous aliens into trunks or engine compartments. *United States v. Mateo Garza*, 541 F.3d 290, 293–94 (5th Cir. 2008).

In recognition of those dangers, the U.S. Sentencing Commission has promulgated several sentencing enhancements for alien smuggling. U.S.S.G. § 2L1.1(b)(1–9). For example, § 2L1.1(b)(5) "applies to a wide variety of conduct" that poses "inherently dangerous risks to the aliens being transported." *United States v. Garcia-Guerrero*, 313 F.3d 892, 896 (5th Cir. 2002) (quotation omitted).

"In short, the Legislative, Executive, and Judicial Branches agree that [alien] trafficking is an inherently dangerous activity, and Congress has responded to that threat by disarming convicted [alien] traffickers via

---

[3] Miriam Jordan, *Smuggling Migrants at the Border Now a Billion-Dollar Business*, N.Y. Times (July 25, 2022), https://www.nytimes.com/2022/07/25/us/migrant-smuggling-evolution.html.

[4] Aaron M. Munoz, *Silver, Secret Drug Wars, & Selfies: The United States' Justification for the Use of Force Against the Mexican Drug Cartels*, 41 W. State Univ. L. Rev. 643, 645 (2014).

[5] Katherine Drabiak, *How Distorting Asylum Law Affects Health & Safety at the Border*, 22 Ind. Health L. Rev. 215, 276 (2025).

No. 25-40026

§ 922(g)(1).  That decision does not violate the Second Amendment."
*Kimble*, 142 F.4th at 318.

* * * * *

Because alien smuggling is an inherently dangerous felony, lifetime disarmament predicated on a § 1324(a)(1)(A)(ii) conviction is consistent with the Second Amendment.[6]  We REVERSE the dismissal of Count One and REMAND.  We place no limitation on the matters that the district court may address on remand and do not mean to indicate what decisions it should reach.

---

[6] Because the government may disarm Palomares based on § 1324(a)(1)(A)(ii)'s constituting an inherently dangerous felony, we do not decide whether § 1324(a)(1)(A)(ii) is sufficiently analogous to Founding-era laws prohibiting slave smuggling.